Johnson's Estate.

Argued January 3, 1939. Before KEPHART, C. J., SCHAFFER, LINN, STERN and BARNES, JJ.

194

*Harold D. Greenwell,* for appellant.

*Morris Smith, Guy K. Bard,* Attorney General, *É. Russell Shockley,* Deputy Attorney General, and *John J. Stetser,* for appellee, were not heard.

OPINION BY MR. JUSTICE LINN, January 26, 1939:

This appeal is from an assessment of inheritance tax under the Act of June 20, 1919, P. L. 521, 72 PS section 2301 et seq. as amended. Section 1 provides: "That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is . . . of goods, wares, and merchandise within this Commonwealth, . . . made by a nonresident, by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

The tax was levied on the transfer of trust property held, pursuant to the terms of a deed of trust, by the Wayne Title & Trust Company, a corporation of Pennsylvania, engaged in business at Wayne, Delaware County, Pennsylvania, and hereafter called the trustee.

The deed[1] was made in Wayne on August 23, 1928, by Richards H. Johnson, describing himself in the deed as "of the City of Cardenas, Republic of Cuba, formerly of Wayne, Pennsylvania. . . ." The deed provided for the payment of income to the settlor for life and, on his death, for the transfer and payment of principal and undistributed income to his three daughters, two of them residing in Wayne, Pennsylvania, and the third in Massachusetts. The trust has been administered in Delaware County, Pennsylvania. The account shows that the deed of trust was prepared by The Wayne Title & Trust Company. The property assigned for the purposes of the trust was a certain bond and mortgage on real estate located in Wayne. The account also shows that the Trustee not only prepared the deed of trust but also prepared the assignment of the mortgage to itself as trustee and made a charge for doing so and for recording the assignment. If foreclosure were required it would take place in Delaware County. The seat of the trust was therefore in Delaware County, Pennsylvania, a conclusion required by the circumstances, particularly by the facts that the settlor selected the trustee whose principal place of business was there, that the obligation and the property securing its payment were there and that resort to the local law was required to perfect the assignment of the mortgage, and, if necessary, its foreclosure. See *Dorrance's Estate,* 333 Pa. 162; *Griscom's Estate,* 333 Pa. 186; Beale, Conflict of Laws, Vol. 1, sec-

---

[1] The money consideration specified was $1.00. The deed contained the following recital: "WHEREAS it is the desire of the party of the first part that the party of the second part accept such assignment, collect the balance of the principal and interest due thereunder with discretionary powers to invest and reinvest such sums as may grow thereout for the benefit and use of the party of the first part during his natural life and upon his death to pay the remaining portion of the principal, interest and accumulated funds to his three daughters . . ., in consideration of the natural love and affection he holds toward them."

tions 118C.40,[2] 118C.41; Restatement, Conflict of Laws, sections 297, 299; *Greenough v. Osgood,* 235 Mass. 235, 126 N. E. 461; *Swetland v. Swetland,* 105 N. J. Eq. 608, 149 A. 50.

The settlor died June 8, 1937. The trustee then filed what it entitled "First and Final Account of The Wayne Title and Trust Company, Trustee," containing principal and income accounts of administration covering the entire trust period. It may be noted that among the items of credit claimed were the payments of state and county personal property taxes. The trust property is now composed of the balance of the amount due on the bond and mortgage originally assigned, mortgage trust fund certificates of the Wayne Title & Trust Company, a United States bond, and cash.

The gifts to the settlor's daughters were "intended to take effect in possession or enjoyment at or after" his death. The tax is payable on the transfer of the interest: *Hostetter's Estate,* 267 Pa. 193, 109 A. 920; *Oliver's Estate,* 273 Pa. 400, 403, 117 A. 81; *Husband's Estate,* 316 Pa. 361, 366, 175 A. 503.

The title of the Act,[3] (to be considered in getting at

---

[2] At page 599 the learned author says: "In the case of a nontestamentary trust a difference must be pointed out between a trust placed in the hands of friends or of persons who do not make a business of administering a trust and a trust placed in the hands of a bank, trust company or an individual or individuals whose business is the administration of trusts. In the latter case it is an almost inevitable inference that the trust is to be administered at the place where the office of the trustee is situated. The trustee will without question administer the trust at the place where he administers other trusts, that is at his business office. In such cases, which are the common cases where the trust is a large and important one, the seat of the trust is therefore at the business office of the trustee."

[3] "AN ACT Providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent who was a resident of this Commonwealth at the time of his death, *and of property within this Commonwealth of a decedent who was a nonresident of the Commonwealth at the time of his death;* and

the legislative intention: *Matis v. Schaeffer*, 270 Pa. 141, 143, 113 A. 64; *Hostetter's Estate*, 267 Pa. 193, 200, 109 A. 920) shows that the legislature used the words "goods, wares, and merchandise" in a broad and not a narrow sense. What was intended by the word "goods," as used? It was held in *Dowdel v. Hamm*, 2 W. 61, that in an assignment for the benefit of creditors the words "goods, chattels and effects" passed title to a judgment. In dealing with the word "goods," it was said: "The word goods is *nomen generalissimum,* and when construed in the abstract, the term will embrace all the personal estate of the testator, as bonds, notes, money, plate, furniture, &c. And such is its effect by the canon law as well as the common law, which seems to have adopted the former: 1 Atk. 180, 182; 3 Id. 62; *Moore v. Moore,* 1 Bro. C. C. 123." ROGERS, J., added that the words would have the same meaning in an assignment as in a will unless the assignor expressly indicated otherwise. Also see *Reimer's Estate,* 159 Pa. 212, 220, 28 A. 186.[4] In the Fiduciaries Act of June 7, 1917, P. L. 447, section 3(b), 20 PS section 350, the word "goods" in the phrase "goods or estate of his testator unadministered" has the same comprehensive meaning.

The legislature obviously intended to deal with all the property of a nonresident whose transfer[5] could be made

---

making it unlawful for any corporation of this Commonwealth, or national banking association located therein, to transfer the stock of such corporation or banking association, standing in the name of any such decedent, until the tax on the transfer thereof has been paid; and providing penalties; and citing certain acts for repeal." (Italics supplied.)

[4] Vol. 4, Words and Phrases, First Series, p. 3131, contains a collection of cases involving the meaning of the word in various connections. The subject is also referred to in *Guppy v. Moltrup,* 281 Pa. 343, 346, 126 A. 766.

[5] "(c) When the transfer is of property made by a resident, or is of real property within this Commonwealth, or of goods, wares, and merchandise within this Commonwealth, or of shares of stock of corporations of this Commonwealth or of national banking associa-

the subject of tax in this state. It dealt with real property, with goods, wares, and merchandise within this Commonwealth, with shares of stock of Pennsylvania[6] corporations and of national banks engaged in business in the state. Obviously, therefore, the legislature intended, by using the words "goods, wares, and merchandise," to include all of a nonresident's Pennsylvania property except real estate and shares of stock of the character described. The fact the settlor was a resident of Cuba will not exempt the transfer from taxation here: cf. *Burnet v. Brooks,* 288 U. S. 378; *Winans v. Attorney General,* [1910] A. C. 27.

Appellant contends that in accord with the maxim *mobilia sequuntur personam* the power to tax was at the settlor's domicile at the time of his death and not in this Commonwealth. The cases cited negative the contention.

What has been said of the deed and of the administration of the trust sufficiently distinguishes cases like *Noailles' Estate,* 236 Pa. 213, 84 A. 665 (1912). *Easby's Estate,* 285 Pa. 60, 131 A. 652 (1926), also referred to by appellant, did not involve a trust seated in this state; the contention of the Commonwealth was that the "parties in interest have elected to consider this intangible personal property as if its situs were here and to have the estate treated precisely as if the decedent had died domiciled here." In that case, however, an automobile, a watch and chain were taxed, presumably as included in the word "goods."

We should perhaps add that the Act of May 6, 1887, P. L. 79, referred to in the opinion of the learned court

tions located in this Commonwealth, made by a nonresident, by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death": Act of June 20, 1919, P. L. 521, section 1(c).

[6] This record does not require consideration of the effect of *First National Bank v. Maine,* 284 U. S. 312.

below was expressly repealed by section 47 of the Act of 1919, supra, P. L. 532. The court had jurisdiction of the trust property and of the trustee. The Act of June 26, 1931, P. L. 1384, 20 PS section 2253a, supplementing the Orphans' Court Act of 1917, expressly confers jurisdiction of the "control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos. . . ." The parties, as we have stated, fixed the seat of the trust in Delaware County within which the court exercised jurisdiction.

The decree appealed from is affirmed, costs to be paid out of the trust property.